THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JESSIE DELGADO, a/k/a JESSE SANCHEZ, Defendant-Appellant.

(No. 73-411; )

Second District (2nd Division)—August 8, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz, Edward N. Morris, and Martin P. Moltz, all of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court: .

Defendant, Jessie Delgado, was indicted by the Winnebago County grand jury on a charge of burglary. A motion to suppress certain oral statements given on the day of his arrest was denied. Defendant was subsequently found guilty at a jury trial and sentenced to 4- to 12-years' imprisonment. Defendant contends on appeal that it was error to deny his motion to suppress, that improper evidence was introduced against him at trial, that there was insufficient evidence of his guilt, that the closing argument of the prosecutor was prejudicial, and that his sentence is excessive. The first issue concerns the admissibility of defendant's statement.

Defendant was taken into custody by Rockford police pursuant to an arrest warrant. Two officers drove defendant to the police station and stayed with him for about 10 minutes until the two arresting officers arrived. The two arresting officers testified that they informed defendant of his *Miranda* rights and gave him a form with his rights on it, which form included a waiver of those rights. Defendant refused to sign the waiver, but did sign the form simply as an indication of having been advised of his rights.

Defendant was then questioned about the instant burglary and related certain facts tending to indicate his guilt. This admission was reduced to writing, but defendant refused to sign the writing, noting at the bottom thereof his refusal.

The following day a doctor saw defendant at the jail and testified that at that time defendant was suffering from a narcotics abstinence syndrome. Defendant was then placed on a methadone program to relieve the withdrawal symptoms.

Defendant testified that he had been taking heroin for 15 years. About an hour before his arrest he had taken an intravenous injunction of about 1 gram of heroin and a half gram of cocaine, getting "high" as a result. Defendant denied being advised of his constitutional rights. He said he had requested an attorney when he was shown the rights form, but was told he would get one when he got to court. He said that the police promised him an attorney if he made a statement. He stated that the statement he gave was false and he refused to sign it because the police did not keep their promise to get an attorney.

■■ From a review of the record of the hearing on the motion to suppress, it is clear that the trial court did not err in finding that the statements defendant gave were the product of a rational intellect. Three officers at the hearing testified that defendant did not complain of being sick or needing a fix on the day of his arrest. One officer said that defen-

dant appeared dopey or drunk. Three officers testified that defendant was acting normally. Defendant asked questions about the rights waiver. He refused to sign the waiver of his rights. When defendant began answering questions, he did so without hesitation.

On this particular issue the question is simply whether the statements defendant gave were the product of a rational intellect and a free will. (*Townsend v. Sain*, 372 U.S. 293, 9 L.Ed.2d 770, 83 S.Ct. 745.) *Townsend* also indicates that drug addiction is a circumstance to be considered. However, "When the statement is clear and lucid and witnesses testify that at the time defendant was alert and able to give a rational statement, prior medical treatment with drugs will not render the statement inadmissible." (*People v. Pote*, 5 Ill.App.3d 856. See also *People v. Muniz*, 31 Ill.2d 130; *People v. Hulet*, 66 Ill.App.2d 194.) The fact that defendant took heroin and cocaine of his own volition does not detract from the applicability of the above cases. There was sufficient evidence here, as detailed above, for the trial judge to find that defendant's having taken heroin and cocaine did not detract from his lucidity. Indeed, having had a recent fix it is likely the defendant was at his most lucid at the time he gave the statement to the police. There is also no question here of defendant having given the statement in order to get a "fix," as he would not have needed one at the time of the statement.

■■ Defendant also argues that his conduct at the time he made the statement indicates that he did not knowingly and voluntarily waive his rights to counsel and to remain silent. At a motion to suppress, the voluntariness of a confession need only be proven by a preponderance of the evidence. (*Lego v. Twomey*, 404 U.S. 477, 30 L.Ed.2d 618, 92 S.Ct. 619.) The decision of the trial court on this matter will not be reversed unless it is contrary to the manifest weight of the evidence. (*People v. Dailey*, 51 Ill.2d 239.) There was sufficient evidence here for the trial judge to find that defendant had been informed of his rights, refused to waive them and then gave a statement which he refused to sign. In *People v. Burbank*, 53 Ill.2d 261, the defendant was advised of his rights and then, according to the officer's testimony, admitted his guilt and did not ask for an attorney. However, he refused to give a written statement. The defendant denied having been advised of his rights and argued that his refusal to give a written statement indicated that he did not intend to waive his constitutional rights. The statement was held admissible and the supreme court affirmed, saying, "Once an accused has been advised of his rights and indicates that he understands them, his choosing to speak and not to request a lawyer is evidence that he knows his rights and chooses not to exercise them." (*People v. Bur-*

*bank*, 53 Ill.2d 261, 266. See also *People v. Starnes*, 8 Ill.App.3d 709.) The instant case is analogous to *Burbank*. Defendant's statement was knowing and voluntary, hence properly not suppressed.

■■ Defendant next argues that there is reversible error in the following answer to a question regarding what conversation took place as to defendant's name after he was brought to the police station:

> "Well, at this time he then told us his name was not Quintero, that his name was Delgado, and we asked him if he also used the name of Jesse Sanchez, and he stated that everybody around the Rockford area that knew him knew him as Jesse Sanchez; that he had served time in Stateville—."

Defense counsel objected at this point on the grounds that evidence of other crimes was inadmissible. The trial judge sustained the objection and instructed the jury to disregard the answer. The general rule is that evidence of other crimes is inadmissible unless the prejudice resulting from an introduction of such evidence is outweighed by its relevancy in proving proximity of the defendant in relation to the offense, identity, design, motive or knowledge. *People v. Cage*, 34 Ill.2d 530.

It is clear that this evidence comes within none of the above mentioned exceptions, hence it should not have been mentioned. This reference to other crimes of defendant was not deliberately elicited by the prosecutor. However, that does not change the fact of the error. (See *People v. Hughes*, 11 Ill.App.3d 224, 231.) The evidence of defendant's former incarceration would usually require a reversal even though, as in *Hughes*, an objection to the testimony was sustained. (See *People v. Stadtman*, 59 Ill.2d 229, 319 N.E.2d 813, 815; *People v. Smith*, 12 Ill. App.3d 1037; *People v. Clark*, 12 Ill.App.3d 280.) It does not follow however that the judgment of conviction must be reversed and a new trial ordered.

The seriousness of any trial error must be considered in relation to the facts of each individual case to determine whether a new trial is warranted. (*People v. Greeley*, 14 Ill.2d 428.) It has been repeatedly held that a judgment of conviction need not be reversed because error has been committed unless it appears that real justice has been denied or that the verdict of the jury may have resulted from such error. (*People v. Tranowski*, 20 Ill.2d 11; *People v. Bridges*, 28 Ill.2d 165.) The defendant's guilt was established beyond all reasonable doubt without regard to the matters complained of and under such circumstances the court will not reverse even if it finds error. *People v. McCasle*, 35 Ill.2d 552, 559; *People v. Berry*, 18 Ill.2d 453.

The evidence here so clearly indicates defendant's guilt that we cannot say the result would have been different without trial irregularities. When

the error complained of could not reasonably have affected the result, the judgment should be affirmed. The question is not whether the record is perfect but whether the defendant has had a fair trial and if his conviction is based on evidence establishing his guilt beyond a reasonable doubt. *People v. Sleezer*, 9 Ill.2d 57, 62.

■■ Defendant next alleges error in that one of the officers who interrogated defendant testified that defendant admitted that on either the night of the burglary or the next night they had tried to sell the gun and the cameras (fruits of the burglary) at the White Horse Tavern. Defendant also contends that it was error to allow an employee of the White Horse Tavern to testify that on the night in question a Pedro Ramos and another man he did not know tried to sell him an automatic pistol that fit the description of the one taken in the instant burglary. The testimony of the officer was not objected to below, so whether it was error will not be considered on appeal. As to the testimony of the tavern employee, evidence of criminal conduct of a defendant subsequent to a crime he is charged with may be admitted, if independently relevant to show, among other things, identity. (*People v. Lehman*, 5 Ill.2d 337.) The testimony of the tavern employee together with that of the officer, amounted to an identification of defendant and indicated his intent in connection with the burglary. A similar situation arose in *People v. Shockey*, 66 Ill.App.2d 245. In *Shockey*, the court allowed the admission of testimony that the defendant had cashed checks taken in the burglary for which he was on trial. In the instant case we have testimony that defendant tried to sell a gun taken in the burglary for which he was on trial.

> "As a general rule, evidence of other offenses is ordinarily inadmissible. A recognized exception to the general rule exists where the evidence tends to aid in the identification of the accused as the person who committed the particular crime charged. People v. Lewis, 30 Ill.2d 617, 198 N.E.2d 812 (1964). There was no error in the admission of the checks in this case since they fall well within the exception to the general rule." (*People v. Shockey*, 66 Ill.App.2d 245, 249.)

See also *People v. King*, 4 Ill.App.3d 942.

On redirect examination of one of the detectives, the prosecutor brought out that statements made by codefendants implicated defendant. This is obviously hearsay. The State argues that it is admissible though, because on cross-examination defendant's attorney brought out the existence of the statements. We cannot agree. The overriding fact is that the police officer said that other persons told him that defendant was involved in the instant offense. Such testimony is inadmissible. (*People v.*

*Harrison,* 25 Ill.2d 407.) We do not believe the error could have affected the result in this case. *People v. Tranowski.*

■■ There was no error in introducing evidence of defendant's flight. The evidence indicated that on the day after the instant burglary, police attempted to execute an arrest warrant for defendant and two others at a residence. Defendant was not inside when the police entered, but they had seen him enter earlier. One of the windows in the living room was damaged, with the screen pushed out. An officer testified that when arrested defendant admitted being present on the day after the burglary and escaping through a window when the police broke in. Evidence of flight may be admitted to show consciousness of guilt. (*People v. Harris,* 52 Ill.2d 558.) Where the record contains no evidence to show that defendant fled for any reason other than consciousness of guilt, as in the instant case, such evidence of flight is admissible. *Harris.*

■■ Defendant also contends that there was not sufficient evidence to find him guilty of burglary. He was tried and found guilty on a theory of accountability, as he did not personally enter the burglarized premises. A person is legally accountable for the conduct of another when he aids or abets another in committing an offense, before or during the commission of the offense with the intent to promote or facilitate such commission. Ill. Rev. Stat. 1973, ch. 38, par. 5—2.

> "* * * if the proof shows that a person is present at the commission of a crime without disapproving or opposing it, it is competent for the jury to consider this conduct in connection with other circumstances and thereby reach the conclusion that he assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the same." (*People v. Cione,* 293 Ill. 321, 331.)

Also:

> "Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction as a principal for a crime committed by another in furtherance of the venture." (*People v. Rybka,* 16 Ill.2d 394, 405. See also *People v. Bracken,* 68 Ill.App.2d 466.)

The evidence in the instant case showed the police arrested two codefendants of defendant the day after the burglary, defendant escaped at that time, some of the goods taken from the burglarized residence were found at the site of the arrest, when captured later defendant gave a false name, admitted driving the codefendants to the scene of the burglary, the two codefendants returned to the car within 15 minutes carry-

ing two paper bags, upon a realization that they had left behind their screwdrivers all three returned to the scene to get them, but the residents had returned, defendant drove the codefendants to the apartment where they were later arrested, the victims of the burglary found a paper bag with screwdrivers in it at their back door, defendant and another person tried to sell some of the fruits of the burglary at a local tavern, some prescription drugs were taken in the burglary, and defendant was a narcotics addict. The only logical conclusion one can draw from this evidence is that defendant knowingly and intentionally participated in the burglary charged. The several cases cited by defendant are inopposite, as they involve considerably less participation by the defendant or lack the large amount of evidence present in the instant case.

Defendant alleges error in the prosecutor's statement in closing argument that "* * * any act done by any of them in furtherance of a common design is the act of all * * *." It is a sufficient answer to this allegation of error that *People v. Kessler*, 57 Ill.2d 493, indicates that the statement at issue here is a correct statement of the law. Defendant's argument that there can be no conviction on the accountability principle for acts which the defendant did not intend is both an incorrect statement of the law and a meaningless argument where the evidence clearly indicates defendant's intention to aid in the burglary.

■■ Finally, defendant argues that certain comments made by the prosecutor in his closing arguments were prejudicial. Statements of counsel based on facts or legitimate inferences therefrom are allowed in closing argument. (*People v. Jefferson*, 69 Ill.App.2d 490.) Calling defendant an addict was therefore permissible, merely a repetition of the evidence. Calling defendant a burglar was also well within the bounds of allowable closing argument because a prosecutor can refer to the nature of the charge and the conduct of the defendant. (*People v. Sawyer*, 42 Ill.2d 294.) The statement that defendant left his codefendants "holding the bag" is supported by the evidence of his escape. Characterizing defendant as an older man recruiting younger men to commit crimes does not appear to have a basis in the evidence, but would not warrant reversal. (*People v. Bravos*, 114 Ill.App.2d 298.) However, the comments about defendant having others "do all the dirty work" is supported by the evidence. In closing argument a prosecutor can reflect unfavorably on the defendant, denounce his wickedness, and even indulge in invective. (*People v. Moore*, 9 Ill.2d 224.) Thus, referring to defendant's conduct as "reprehensible" is permitted. As to the allegation of error regarding the prosecutor's statement that defendant supported his narcotics habit by stealing, the jury was instructed to disregard it, so absent some

898

.showing that it prejudiced defendant, there was no error on this point.

Finally we proceed to consider defendant's contention that the trial court erred in imposing an excessive sentence.

■■ When a sentence is within the limits prescribed by the legislature, the reviewing court should not disturb it unless it clearly appears that the punishment constitutes a great departure from the fundamental law in spirit or purpose. (*People v. Taylor*, 33 Ill.2d 417.) Defendant here had four prior convictions, spending 9 out of the past 11 years in the penitentiary. His sentence is not excessive. See *People v. Edmond*, 20 Ill.App.3d 1033.

Judgment affirmed.

RECHENMACHER, P. J., and T. MORAN, J., concur.